S. Frank Bacheldor, Plaintiff, *v.* Albert B. Syrcher, Individually and as Executor, etc., of Nellie Syrcher, Julius Kessler, Buffalo Savings Bank, Lillian M. Syrcher and Herman G. Muelke, Defendants.

Supreme Court, Erie County, February 24, 1941.

*Charles W. Strong*, for the plaintiff.

*Little & Burt* [*Leroy H. Hurlbert* of counsel], for the defendant Buffalo Savings Bank.

*Moot, Sprague, Marcy & Gulick* [*David L. Landy* of counsel], for the defendant Julius Kessler.

*Harter & Schork*, for the defendants Albert B. Syrcher and Lillian M. Syrcher.

*Albert J. Leitrick*, for the defendant Herman G. Muelke.

MALONEY, J. The plaintiff, a judgment creditor of the defendant Albert B. Syrcher, the residuary legatee and executor of the last will and testament of his mother, Nellie Syrcher, deceased, brought the within action to set aside the sale of certain real property devised to defendant by his mother in the will aforesaid. Plaintiff on May 6, 1930, recovered a judgment against Albert B. Syrcher in the amount of $3,620.35 and docketed the same in the Erie county clerk's office. Execution was returned and is now wholly unsatisfied. February 22, 1933, Nellie Syrcher died leaving a will as aforesaid. The defendant, her son, was named as executor therein with full power of sale of her realty. On March 1, 1933, the will was probated and letters testamentary thereon issued to her son. The deceased left her surviving her husband, defendant Julius Kessler, as to whom no provision was

made in her will; a son, E. Victor Syrcher, to whom she bequeathed $500; and her son, defendant Albert B. Syrcher aforesaid, against whose interest in the real property plaintiff claims a lien.

The executor petitioned the Surrogate's Court for leave to sell said real property, alleging that the personal property was insufficient to pay the debts of decedent's estate. The court granted an order directing the sale thereof as provided by section 233 of the Surrogate's Court Act, and the property was reported to the court as sold to defendant Julius Kessler for the sum of $3,500, as appears in the petition for the decree of confirmation of the sale granted on July 20, 1933. It appears therein the terms of sale provided that the purchaser pay $2,000 in cash, the balance of $1,500 to be paid by the purchaser taking the property subject to a first mortgage in the sum of $1,500 held by defendant Buffalo Savings Bank. The property in question was conveyed by the executor to defendant Julius Kessler. The executor did not disclose the lien of plaintiff's judgment against his interest in the real estate, nor did he give any notice of sale to plaintiff. On August 21, 1933, Kessler conveyed the property aforesaid to Lillian M. Syrcher, wife of the executor, who, on December 8, 1933, mortgaged the property to defendant Buffalo Savings Bank in the sum of $3,500, and thereafter Lillian M. Syrcher conveyed the property to Herman G. Muelke for the sum of $1,000 subject to the first mortgage lien last aforesaid. Prior to deceased's marriage to Kessler, her husband died, leaving her $3,000 insurance. After her marriage to Kessler the insurance money, at her direction, was deposited in a bank to the joint account of the husband and wife, withdrawals to be made therefrom upon the signature of the husband, who was in possession of the deposit book. Later after she was taken ill and incapacitated, she requested the husband to use the money in the joint account for their support and the expenses of her illness, and upon her death the balance remaining to be the property of her husband. The husband quit his job and cared for her until her death.

Defendant Kessler was indebted to defendant Albert B. Syrcher in the sum of $2,800. That indebtedness was satisfied and canceled upon the payment to Mrs. Syrcher by Kessler of $1,000 and in addition thereto he waived in writing his right of election to his share as husband of his deceased wife's estate. (Dec. Est. Law, § 18.)

Plaintiff sought to have the sale aforesaid set aside in the Surrogate's Court. Plaintiff therein argued and now argues that the sale of the property was in fraud of plaintiff, and thereby defend-

ant Syrcher rendered himself insolvent and the sale was fraudulent and void under article 10 of the Debtor and Creditor Law. (See opinion of Judge HART in *Matter of Syrcher* [ *Kessler*], 164 Misc. 102.)

I do not concur in the opinion of Judge HART as aforesaid to the effect that the sale of the property was valid. The true facts of the alleged sale herein sought to be set aside were withheld from him and different and other facts were substituted and presented in place and stead thereof. It was on the later facts the surrogate made his decision. The facts with reference to the alleged sale are not disputed by the parties to the within litigation. The alleged sale, whether it was held by virtue of the power of sale granted in the decedent's will or by virtue of proceedings in the sale and confirmation of the same held under section 233 of Surrogate's Court Act was never in fact or law a valid sale of the real property in question. The sale to Julius Kessler and the consideration reported to the court were fictitious. The executor's report of sale to the surrogate stated that the defendant Kessler purchased the property from the executor for the consideration hereinbefore mentioned. The files of the Surrogate's Court in evidence confirm the fact that the sale was fictitious and not in conformity with the undisputed evidence on this trial to the effect that defendant Kessler never directly or indirectly paid any money to the executor or any other person for the purchase of the real property, nor did he give anything of value to the executor. He had no knowledge of the proceeding or of the sale; in fact, he was ill in a hospital at the time the deed from the executor to him was recorded in the county clerk's office. By reason of the above the purported conveyance to Kessler was invalid. It is unnecessary for this court to pass on the question of lack of notice of sale to plaintiff or as to whether or not the defendant Albert B. Syrcher individually rendered himself insolvent pursuant to the Debtor and Creditor Law.

The claim of the plaintiff that immediately upon the will being admitted to probate his judgment against defendant Albert B. Syrcher became a good and valid first lien upon the property is made on the theory that at the death of deceased, her estate was free of debts; that the balance of the insurance aforesaid and the salable value of deceased's personal effects were sufficient to pay the legal and funeral expenses, and by arithmetical computation a theoretical sum sufficient to warrant this argument was arrived at, entirely ignores defendant Kessler's right of election aforesaid, and further ignores the payment of the debt owing to Albert B. Syrcher by Kessler as a part of the consideration

for the waiver by Kessler of his right of election, to say nothing of the legal and funeral expenses and the bequest of $500 made to E. Victor Syrcher, all of which are set out in section 234 of the Surrogate's Court Act as " For what purposes real property is subject to disposition."

Plaintiff claims that the power of sale in the will merged in the title of the devisee herein and the donee of the power and is void. This claim is untenable in view of the facts immediately before discussed. Plaintiff ignores the facts herein found that the unpaid debts of the estate warranted a sale of the real estate under the power of sale granted in the decedent's will. The sale of the real estate under the power last mentioned if exercised by the executor in a *bona fide* sale would have divested plaintiff and Albert B. Syrcher of any interest they had therein.

The defendant Buffalo Savings Bank loaned $3,500 to defendant Lillian M. Syrcher on her bond, relying to some considerable extent on the collateral security tendered to the bank, viz., a first lien on the property in question to the extent of the loan aforesaid in the form of a first mortgage. Mrs. Syrcher knew that she had not paid any consideration to the defendant Kessler for the conveyance to her of the title to the property. She was an active participant with her husband and the defendant Kessler in bringing about the purported sale to pay the debts of the estate. It is fair, therefore, to conclude that she was cognizant of the passing of title from the executor to Kessler and by him to her without the payment of any consideration therefor.

The defendant bank had a right to rely on the search and records of the Surrogate's Court with reference to the sale, particularly upon the decision of Judge HART, Surrogate, in the proceedings brought by the plaintiff to set the sale aside. (*Matter of Syrcher* [*Kessler*], *supra.*)

A fraud was perpetrated by Mrs. Syrcher in obtaining a loan from the defendant bank under the above circumstances. The most careful conveyancer upon the examination of the search and the complete records of the Surrogate's Court would find no evidence of the fictitious and fraudulent sale. Neither would they have revealed the slightest inkling nor reason to believe that the sale was not valid. The facts aforesaid apply not only to the bank but also to the defendant Herman G. Muelke, now the owner of the record title of the premises in question.

It follows that the bank and Muelke had no valid lien or deed respectively, although they entered into a *bona fide* mortgage and purchase, without knowledge of the fraud aforesaid and for

fair and valid consideration. Under the facts as I find them, the defendant bank satisfied its first mortgage lien in the amount of $1,500, plus accrued interest, and paid the balance of the new mortgage loan in the amount of approximately $1,818, and out of said moneys there was paid by Mrs. Syrcher $543 for funeral expenses of the deceased; $549.45 for the legal expenses in the administration of the estate; $75 for a headstone for the grave of the deceased; and $500 paid to E. Victor Syrcher by reason of a specific bequest contained in his mother's will; or a total indebtedness of the estate amounting to $1,667.45. I find further that defendant bank is entitled to an equitable lien against the property in question in the sum of $1,500 for the discharge of the mortgage owned by the bank; $182 for accrued interest and disbursements, and $1,667.45 expended for the payment of the bequest and debts of the estate. Surely the bank having advanced money used in the payment of the different items aforesaid as a matter of equity becomes the owner by equitable assignment of the debts and obligations of the estate so paid.

I, therefore, find that the bank has an equitable first·lien on the premises in question in the sum of $3,349.45 and interest thereon.

The defendant Muelke having entered into a *bona fide* purchase of the premises in question for a fair consideration and without notice of the fraudulent conveyances hereinbefore mentioned, paid the sum of $1,000 to the defendant Lillian M. Syrcher, and assumed the mortgage of $3,500 and in addition thereto for painting, repairs and improvements expended in good faith the sum of $579.83. I find that the defendant Muelke has an equitable lien in the premises in question in the amount of $1,579.83, second only to the equitable lien of the defendant bank as hereinbefore mentioned.

I find that the title to the premises in question is in defendant Albert B. Syrcher, subject to the liens aforesaid.

I order and decree that within sixty days after final judgment is entered herein, the premises in question be sold at public sale to the highest bidder, subject to the liens aforesaid.

I order, decree and direct the executor Albert B. Syrcher to sign, seal and deliver an executor's deed of the property of deceased, subject to the liens aforesaid, under the power of sale granted to him by the deceased in her last will and testament, to a purchaser certified by the referee hereinafter named as being the highest bidder, upon proof by a certificate of a bank in Buffalo, N. Y., to the effect that there has been deposited therein to the account of the referee the purchase price, if any, received, the

proceeds of such sale, if any, after paying the referee herein, to be paid to plaintiff therefrom up to the amount of his judgment.

I hereby appoint Charles H. Dwyer as referee to sell to the highest bidder at public sale the premises in question, subject to the liens of the defendant Buffalo Savings Bank and the defendant Herman G. Muelke.

I further order and decree that the plaintiff have judgment against the defendant Lillian M. Syrcher in the sum of $700, that being the amount of the proceeds of the sale to defendant Muelke appropriated by defendant Lillian M. Syrcher to her own use. Upon satisfaction of the said judgment, plaintiff is hereby ordered to credit the same to his judgment against the defendant Albert B. Syrcher.

I further order and decree a judgment in favor of the Buffalo Savings Bank against Lillian M. Syrcher for the difference between the amount of the mortgage money advanced to said Lillian M. Syrcher and the amount of the lien determined in favor of the Buffalo Savings Bank as found herein.

The plaintiff having failed to prove his cause of action against the defendants Buffalo Savings Bank, Herman G. Muelke and Julius Kessler by a fair preponderance of the evidence, I find that each of the defendants separately are entitled to a verdict against the plaintiff of no cause of action, without costs to any of the parties against the others.

Let judgment enter accordingly, with costs to the plaintiff against the defendant Lillian M. Syrcher.